## SALEM TRUST COMPANY v. MANUFACTURERS' FINANCE COMPANY ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
FIRST CIRCUIT.

No. 74.　Argued October 15, 1923.—Decided February 18, 1924.

1. In a suit between citizens of different States to determine which
   of them is entitled to a fund which by their agreement has been
   collected by one and deposited to his special account, as trustee,
   to be paid to himself or the other as the issue between them shall
   be determined, the depositary is not a necessary party, and its
   joinder as defendant in the state court will not prevent removal to
   the federal court. P. 189.
2. In the absence of any local statute or usage, the question whether
   prior notice to the debtor of the later of two assignments of an
   account receivable subordinates the rights of the earlier to those
   of the later assignee, is a question of general law in deciding which
   the federal court is not bound by the decisions of the highest court
   of the State. P. 191.
3. While there are contingencies which entitle the second of two
   successive assignees of the same chose in action to prevail over the
   first, mere priority of notice to the debtor by a second assignee
   who lent money to the assignor in consideration of his assignment,
   without making any inquiry of the debtor, is not sufficient to sub-
   ordinate the first assignment to the second.　Pp. 194, 197.

280 Fed. 803, reversed.

CERTIORARI to a decree of the Circuit Court of Appeals
affirming a decree of the District Court which dismissed a
suit brought by the above named petitioner against the
above named respondent, and its corespondent, Inter-
national Trust Company, to determine the rights of the
first two, as assignees, to a fund deposited with the third.

*Mr. Alexander Whiteside*, with whom *Mr. Arthur
Drinkwater* and *Mr. Raymond P. Baldwin* were on the
brief, for petitioner.

The proceeding was erroneously removed.

The trust *res* is the debt the Trust Company owes the Finance Company as trustee under the agreement between petitioner and respondent.  This suit was brought by petitioner not only to determine its rights, but to collect the debt.  The Trust Company was made a party for the purpose of collection, and for that purpose must be an indispensable party.

The agreement also provided that the question of the ownership of the proceeds of the assigned accounts, if the two parties should be unable to agree on the same, should be determined by a proper proceeding, brought by either party, in a court of competent jurisdiction.  This amounts to an agreement on the part of the Finance Company that petitioner might bring a proceeding in *any* court of competent jurisdiction.  While an agreement not to remove a case to a federal court is void, it does not follow that an agreement that a party may prosecute an action in a state court is not valid and enforceable where based on adequate consideration.

By the great weight of authority an assignee of a chose in action has priority without notice over attaching or other creditors of the assignor.  5 Corpus Juris, 971–973.

The first assignee should have priority unless for some reason it is estopped.  The assignment of a chose in action is valid and complete, and title to it passes, before any notice is given to the obligor.  *Greey* v. *Dockendorff,* 231 U. S. 513; *Putnam* v. *Story,* 132 Mass. 205; *Thayer* v. *Daniels,* 113 Mass. 129; *Fortunato* v. *Patten,* 147 N. Y. 277; *In re Hawley Furnace Co.,* 238 Fed. 122; *Petition of National Discount Co.,* 272 Fed. 570.  Whether legal or equitable, some title passes,—all that the assignor has power to give.

In Massachusetts, in the absence of estoppel, the claim of the first assignee will prevail against that of a subsequent assignee regardless of notice to the obligor.  *Thayer* v. *Daniels,* 113 Mass. 129; *Putnam* v. *Story,* 132 Mass.

205; *Herman* v. *Mutual Life Ins. Co.*, 218 Mass. 181; *Rabinowitz* v. *People's Natl. Bank*, 235 Mass. 102.

Since the contracts of assignment were made and to be performed in Massachusetts, and since all parties, except the Finance Company, were Massachusetts corporations, and since the forum was a Massachusetts forum, the law of Massachusetts must govern all the questions involved. The fact that the Finance Company was a Delaware corporation does not give it the right to demand the application of the law of some other geographical unit. *Horn Silver Mining Co.* v. *New York*, 143 U. S. 305; *Shaffer* v. *Carter*, 252 U. S. 37.

The court below erroneously held that the relative merits of the equities of successive assignees of the same chose in action was a question of general jurisprudence and that, consequently, the federal courts were not bound by decisions of the state court in determining the territorial law of Massachusetts.

The federal decisions relied on by the majority of the court below and by the Finance Company do not justify this Court in approving the naked rule of mere priority of notice. *Methven* v. *Staten Island Light Co.*, 66 Fed. 113; *In re Leterman, Becher & Co.*, 260 Fed. 543; *Judson* v. *Corcoran*, 17 How. 612; *Spain* v. *Hamilton's Admr.*, 1 Wall. 604; *Laclede Bank* v. *Schuler*, 120 U. S. 511; *Dearle* v. *Hall*, 3 Russ. 1; *Farmers' & Merchants' Bank* v. *Farwell*, 58 Fed. 633; *The Elmbank*, 72 Fed. 610; *Third National Bank* v. *Atlantic City*, 126 Fed. 413; and *In re Hawley Furnace Co.*, 233 Fed. 451, distinguished. See *Foster* v. *Cockerell*, 3 Cl. & F. 456; *Ward* v. *Duncombe*, [1893] A. C. 369. The weight of authority in the various state courts, and also the weight of federal decisions, are against this rule. *Greey* v. *Dockendorff*, 231 U. S. 513; *Petition of National Discount Co.*, 272 Fed. 570.

State court decisions control federal courts as to assignments and pledges or choses in action and as to chattel

mortgages, conditional sales and liens; as to real estate, wills, descent and distribution; as to construction of state constitutions and statutes; as to liability for personal injury; and as to miscellaneous contracts. [Citing many decisions of this and of lower federal courts.]

The denial of certiorari in *In re Leterman, Becher & Co.*, 260 Fed. 543, adds nothing to the authority of that case. *Hamilton-Brown Shoe Co.* v. *Wolf Bros. & Co.*, 240 U. S. 251. See *Coleman & Co.* v. *Tawas Co.*, 250 U. S. 668; and *Benedict* v. *Ratner*, 259 U. S. 579.

*Mr. Robert G. Dodge*, with whom *Mr. Laurence Curtis 2d* was on the brief, for respondents.

The fact that the International Trust Company, which, like the plaintiff, is a Massachusetts corporation, was made a party defendant, did not prevent the removal of the case. It was in no sense a necessary party, as it had no concern whatever with the outcome of the controversy between the plaintiff and the Finance Company. A final decree in favor of plaintiff would naturally run against the Finance Company only, requiring that company to draw a check on the account in favor of the plaintiff. The Trust Company is a mere debtor of the Finance Company, and the fact that the deposit stands in the name of the latter as trustee does not change the relation. *In re Nichols*, 166 Fed. 603; *Minard* v. *Watts*, 186 Fed. 245; *Fletcher* v. *Sharp*, 108 Ind. 276; *Paul* v. *Draper*, 158 Mo. 197; Perry, Trusts, 6th ed., § 122.

It is settled that the citizenship of a merely nominal party is immaterial upon the question of removability on the ground of diverse citizenship. *Walden* v. *Skinner*, 101 U. S. 577; *Barney* v. *Latham*, 103 U. S. 205; *Bacon* v. *Rives*, 106 U. S. 99; *Ex parte Nebraska*, 209 U. S. 436; *Niles-Bement-Pond Co.* v. *Iron Moulders Union*, 254 U. S. 77; *New York Construction Co.* v. *Simon*, 53 Fed. 1; *Shattuck* v. *North British Ins. Co.*, 58

Fed. 609; *American National Bank* v. *National Benefit & Casualty Co.,* 70 Fed. 420; *First National Bank* v. *Bridgeport Trust Co.,* 117 Fed. 969; *Harvey* v. *Harvey,* 290 Fed. 653.

On the question of priority as between the assignees, the English rule, that the party who first gives notice is entitled to priority, is the established rule in the federal courts. *Judson* v. *Corcoran,* 17 How. 612; *Spain* v. *Hamilton's Admr.,* 1 Wall. 604; *Laclede Bank* v. *Schuler,* 120 U. S. 511; *Farmers' & Merchants' Bank* v. *Farwell,* 58 Fed. 633; *Methven* v. *Staten Island Light Co.,* 66 Fed. 113; *The Elmbank,* 72 Fed. 610; *Third National Bank* v. *Atlantic City,* 126 Fed. 413; *In re Hawley Furnace Co.,* 233 Fed. 451; *In re Leterman, Becher & Co.,* 260 Fed. 543. Distinguishing, *Petition of the National Discount Co.,* 272 Fed. 570; *Greey* v. *Dockendorff,* 231 U. S. 513. See further: *Fortunato* v. *Patten,* 147 N. Y. 277; *Graham Paper Co.* v. *Pembroke,* 124 Cal. 117; *Lambert* v. *Morgan,* 110 Md. 1; *Lumber Co.* v. *Newcomb,* 79 Miss. 462; *Jenkinson* v. *New York Finance Co.,* 79 N. J. Eq. 247; *Jack* v. *National Bank,* 17 Okla. 430; *Phillips's Estate,* 205 Pa. St. 515; *Coffman* v. *Liggett,* 107 Va. 418; Pomeroy, Eq. Juris., 4th ed., § 695, note J; 66 L. R. A. 761; 5 Corp. Jur. 953; 19 Yale Law Jour. 258, 263; 60 Univ. of Penna. Law Rev. 668, 669.

*Dearle* v. *Hall,* 3 Russ. 1; *Foster* v. *Cockerell,* 3 Cl. & F. 456; *Meux* v. *Bell,* 1 Hare, 73; Story, Eq. Juris., § 1384. In the federal courts, and in the state courts which follow *Dearle* v. *Hall, supra,* the rule is stated and applied without being limited to cases where the second assignee made inquiry or was in fact misled. See the cases and text writers above cited, and also *Lambert* v. *Morgan,* 110 Md. 1; Scott's Cases on Trusts, p. 623.

The question is one of general jurisprudence on which the federal court is not controlled by decisions of the state court. *Methven* v. *Staten Island Light Co.,* 66 Fed.

113; *In re Leterman, Becher & Co.,* 260 Fed. 543; *Swift v. Tyson,* 16 Pet. 1.

The rights of owners of choses in action have been constantly dealt with by the federal courts as matters of "general jurisprudence." The question whether a transferee of a negotiable instrument is entitled to rank as a holder for value is such a question. *Swift* v. *Tyson, supra; Oates* v. *National Bank,* 100 U. S. 239; *Railroad Co.* v. *National Bank,* 102 U. S. 14.

So of the right of a purchaser of municipal bonds to rely upon recitals therein, *Presidio County* v. *Noel-Young Bond Co.,* 212 U. S. 58; of the validity of the assignment of an insurance policy, *Russell* v. *Grigsby,* 168 Fed. 577; *New York Life Ins. Co.* v. *Dunlevy,* 214 Fed. 1; of whether the title to checks deposited in a bank passes to the bank in the absence of agreement, *In re Jarmulowsky,* 249 Fed. 319; *In re Grocers Baking Co.,* 266 Fed. 900; of whether an instrument purporting to effect an absolute transfer of title may be shown to have been intended as security only, *Russell* v. *Southard,* 12 How. 139; of the rights of a holder of an insurance policy issued before the payment of the first premium, *MacKelvie* v. *Mutual Benefit Life Ins. Co.,* 287 Fed. 660. See *Aetna Life Ins. Co.* v. *Moore,* 231 U. S. 543; *Myrick* v. *Michigan Central R. R. Co.,* 107 U. S. 102; *Harper* v. *Hochstim,* 278 Fed. 102; *Johnson* v. *Norton Co.,* 159 Fed. 361.

MR. JUSTICE BUTLER delivered the opinion of the Court.

On May 16, 1919, the Nelson Blower & Furnace Company, a Massachusetts corporation, assigned to the petitioner for a valuable consideration indebtedness to the amount of $45,000 due or to become due to the Nelson Company from the Murray & Tregurtha Corporation, under a contract whereby the Nelson Company was to construct certain engines for the latter. July 15, 1919,

the Nelson Company for a valid consideration assigned to the respondent, Manufacturers' Finance Company, the same indebtedness to the amount of $40,000, and on September 20 made another assignment to the Finance Company of the same indebtedness to the amount of $10,000. Later, about the last mentioned date, the Finance Company notified the debtor of its assignment. Up to that time it had made no inquiry of the debtor as to its indebtedness to the Nelson Company, and neither it nor the debtor had any knowledge of the prior assignment to the petitioner. September 26, 1919, the United States District Court in a suit in equity appointed a receiver of the Nelson Company. About that time each assignee learned of the assignment to the other. October 6, 1919, petitioner and respondent Finance Company agreed that the Nelson Company, acting by its receiver, should finish the work being done for the debtor, and that the net proceeds, which amounted to $7,963.36, a sum less than the amount of the claim of either assignee, should be deposited with the respondent International Trust Company, a Massachusetts corporation, in a special account in the name of the Finance Company as trustee for the one or the other of such assignees thereafter to be agreed by them, or found by some court of competent jurisdiction, to be entitled thereto. They failed to agree, and petitioner brought a bill in equity in the state court against the respondents to establish its right to the amount so on deposit, and to have the same paid to it. For the removal of the suit to the District Court of the United States, the Finance Company filed its petition stating that the International Trust Company is not a necessary party to the suit but is a mere nominal party, being only a stakeholder and without any interest whatever in the result, and that the controversy in the suit is entirely between citizens of different States, Salem Trust Company, a Massachusetts corporation, and the Manufacturers' Finance

Company, a Delaware corporation.    Other proper steps
were taken, and the case was removed from the state to
the federal court.    Petitioner moved to remand, asserting
that the International Trust Company is a necessary party
to the suit, and that the case was improperly removed, be-
cause the plaintiff and one of the defendants are citizens
of the same State.    The motion was denied.    The case
was tried in the District Court and dismissed on final de-
cree which was affirmed by the Circuit Court of Appeals.

There are two questions for decision:    Did the District
Court have jurisdiction?    Which of the parties is entitled
to the fund?

The District Courts have original jurisdiction of con-
troversies between citizens of different States (Constitu-
tion, Art. III, § 2; Judicial Code, § 24); and when in any
suit brought in a state court, there is a controversy, which
is wholly between citizens of different States, and which
can be fully determined as between them, a defendant in-
terested in such controversy may remove the suit to the
proper District Court of the United States.    Judicial
Code, § 28.    District Courts have jurisdiction if all the
parties on the one side are of citizenship diverse to those
on the other side.[1]    Jurisdiction cannot be defeated by
joining formal or unnecessary parties.[2]    The right of re-
moval depends upon the case disclosed by the pleadings
when the petition therefor is filed, (*Barney* v. *Latham,*

---

[1] *Raphael* v. *Trask,* 194 U. S. 272, 277; *Gage* v. *Carraher,* 154 U. S.
656; *Ayres* v. *Wiswall,* 112 U. S. 187, 192; *Removal Cases,* 100 U. S.
457, 468–469; *Strawbridge* v. *Curtiss,* 3 Cranch, 267; *Chipman* v.
*West United Verde Copper Co.,* 271 Fed. 91; *Danks* v. *Gordon,* 272
Fed. 821, 824.

[2] *Wormley* v. *Wormley,* 8 Wheat. 421, 451; *Wood* v. *Davis,* 18 How.
467, 469; *Walden* v. *Skinner,* 101 U. S. 577, 589; *Wilson* v. *Oswego
Township,* 151 U. S. 56, 64; *Geer* v. *Mathieson Alkali Works,* 190 U. S.
428, 435; *Wallin* v. *Reagan,* 171 Fed. 758, 763; *Jackson* v. *Jackson,*
175 Fed. 710, 716; *Atchison, T. & S. F. Ry. Co.* v. *Phillips,* 176 Fed.
663, 666.

103 U. S. 205, 215; *Ex parte Nebraska,* 209 U. S. 436, 444)
and is not affected by the fact that one of the defendants
is a citizen of the same State as the plaintiff, if that de-
fendant is not an indispensable party to the controversy
between plaintiff and defendant who are citizens of dif-
ferent States. *Barney* v. *Latham, supra,* 213. The facts
set forth in the present bill are substantially those already
stated. This suit involves a controversy between the pe-
titioner, a citizen of Massachusetts, and the respondent,
the Finance Company, a citizen of Delaware, which can
be determined without affecting any interest of the other
respondent, the International Trust Company, a citizen
of Massachusetts. The latter is not an indispensable
party. See *Niles-Bement Co.* v. *Iron Moulders Union,*
254 U. S. 77, 80. It has no interest in the controversy
between the petitioner and the other respondent. Its
only obligation is to pay over the amount deposited with
it when it is ascertained which of the other parties is en-
titled to it. On the question of jurisdiction, an unneces-
sary and dispensable party, will not be considered. *Wal-
den* v. *Skinner,* 101 U. S. 577, 589; *Bacon* v. *Rives,* 106
U. S. 99, 104; *Ex parte Nebraska, supra.* The cases of
*Wilson* v. *Oswego Township,* 151 U. S. 56, and *Construc-
tion Co.* v. *Cane Creek,* 155 U. S. 283, do not support the
contention that this case was not properly removed to the
federal court. These cases hold that where the object
of the suit is to recover possession of personal property the
one in possession is a necessary and indispensable, and not
a formal, party. Here, no cause of action exists against
the International Trust Company, because it has not been
determined which of the other parties is entitled to pay-
ment. The District Court had jurisdiction. The motion
to remand was rightly denied.

As between successive assignees of the same account re-
ceivable, does prior notice to the debtor of the later as-
signment without more subordinate the rights of the
earlier to those of the later assignee?

There is a conflict of authority on the question. Under decisions of the Supreme Judicial Court of Massachusetts, which are in harmony with the decisions of the highest courts in a number of the States,[3] the earlier assignee would prevail. The courts below held the question to be one of general jurisprudence, declined to be bound by the Massachusetts decisions, and followed what they understood the rule to be, as applied by this and other federal courts,[4] and in a number of the States,[5] and decided that the later assignee, the first to give notice to the debtor, is entitled to the money.

The question is one of general law, not based on any legislation of the State or local law or usage, and the

---

[3] *Putnam* v. *Story,* 132 Mass. 205, 211; *Tingle* v. *Fisher,* 20 W. Va. 497, 506, 510; *Meier* v. *Hess,* 23 Ore. 599, 603; *Columbia Finance & Trust Co.* v. *First National Bank,* 116 Ky. 364, 375; *Fortunato* v. *Patten,* 147 N. Y. 277, 283; *Hawk* v. *Ament,* 28 Ill. App. 390, 394; *Harris County* v. *Campbell,* 68 Tex. 22, 29; *White* v. *Wiley,* 14 Ind. 496; *Maybin* v. *Kirby,* 4 Richardson (S. C.) 105, 114. See also *Thayer* v. *Daniels,* 113 Mass. 129, 131; *Herman* v. *Mutual Life Ins. Co.,* 218 Mass. 181, 186. *Rabinowitz* v. *People's National Bank,* 235 Mass. 102; *MacDonald* v. *Kneeland,* 5 Minn. 352, 361, 365; *Bellingham Bay Boom Co.* v. *Brisbois,* 14 Wash. 173, 176; *Trust Co.* v. *Krause,* 22 Ohio C. C. (N. S.) 216; *Houser* v. *Richardson,* 90 Mo. App. 134, 139.

[4] *Judson* v. *Corcoran,* 17 How. 612; *Spain* v. *Hamilton's Administrator,* 1 Wall. 604; *Laclede Bank* v. *Schuler,* 120 U. S. 511; *Farmers' & Merchants' Bank* v. *Farwell,* 58 Fed. 633; *Methven* v. *Staten Island Light, Heat & Power Co.,* 66 Fed. 113; *In re Leterman, Becher & Co.,* 260 Fed. 543.

[5] *Graham Paper Co.* v. *Pembroke,* 124 Cal. 117, 120; *Lambert* v. *Morgan,* 110 Md. 1, 26; *Jenkinson* v. *New York Finance Co.,* 79 N. J. Eq. 247, 257; *Jack* v. *National Bank,* 17 Okla. 430, 435; *Phillips's Estate,* 205 Pa. St. 515, 521; *Vanbuskirk* v. *Hartford Fire Insurance Co.,* 14 Conn. 141, 144; *Dillingham* v. *Insurance Co.,* 120 Tenn. 302, 309; *Bank* v. *Insurance & Trust Co.,* 17 App. D. C. 112, 124; *Ward & Co.* v. *Morrison,* 25 Vt. 593, 599. See also *Merchants & Mechanics Bank* v. *Hewitt,* 3 Iowa, 93, 102; *Lumber Co.* v. *Newcomb,* 79 Miss. 462, 466; *Perkins* v. *Butler County,* 44 Nebr. 110, 116.

lower court rightly decided that it was not bound by the rule applied in the decisions of the highest court of Massachusetts. *Swift* v. *Tyson,* 16 Pet. 1, 18; *Boyce* v. *Tabb,* 18 Wall. 546; *Railroad Company* v. *National Bank,* 102 U. S. 14, 28; *Presidio County* v. *Noel-Young Bond Co.,* 212 U. S. 58, 73; *Methven* v. *Staten Island Light, Heat & Power Co.,* 66 Fed. 113; *In re Leterman, Becher & Co.,* 260 Fed. 543, 547.

The precise question now before us was not involved, and therefore was not decided, in any of the decisions of this Court cited by the Circuit Court of Appeals.

In *Judson* v. *Corcoran,* 17 How. 612, one Williams had a claim against Mexico for the illegal confiscation of a cargo. Under a treaty with Mexico (9 Stat. 922) such claims were to be adjusted by the United States upon allowance by a board of commissioners created by an act of Congress. 9 Stat. 393. Judson obtained from Williams an assignment of an interest in the claim. Later Corcoran obtained assignments covering the whole claim. The board found that Corcoran owned the whole claim and made an award in his favor. Judson set up no pretensions to the claim until after the award, some six years from the time he obtained the assignment. This Court (p. 614) pointed out that the assignor, having parted with his interest by the first assignment, the second assignee could take nothing by the later assignment; that the purchaser is entitled only to the remedies of the seller, and hence has arisen the maxim that "he who is first in time is best in right." The second assignee had drawn to his equity a legal title to the fund (the award of the board of commissioners); and it was said that,—assuming that no negligence could be imputed to the earlier assignee and that the case was one where an equity in the same chose in action was successively assigned to two innocent persons whose equities are equal,—there must be applied the rule that "the equities being equal, the law must prevail."

The court said (p. 615): "There may be cases in which a purchaser, by sustaining the character of a bona fide assignee, will be in a better situation than the person was of whom he bought; as, for instance, where the purchaser, who alone had made inquiry and given notice to the debtor, or to a trustee holding the fund, (as in this instance,) would be preferred over the prior purchaser, who neglected to give notice of his assignment, and warn others not to buy."

Judson took his assignment in 1845 and first produced it in 1851. In the meantime, Corcoran got his assignment, gave notice, and prosecuted it to final award. It was held that he was entitled to the fund. Clearly that case does not hold that mere priority of notice by a later assignee will subordinate the rights of the first purchaser.

In *Spain* v. *Hamilton's Administrator,* 1 Wall. 604, the fund was one-tenth of the amount to be received from the United States on account of bonds of the Republic of Texas, after payment of a debt owed by a bank to one Wetmore, which the bonds were pledged to secure. Wetmore was trustee to make collection. The bank gave Hamilton an order on him for the fund. Hamilton made the following assignments: February 12, 1850, to Spain in general terms, without limit as to amount and not identifying the fund. August 30, 1850, to Wetmore for $2,500. September 21, 1850, to Corcoran & Riggs for $30,000, which was presented to and accepted by Wetmore. April 30, 1851, to Robb, the whole fund, subject to Wetmore's claim and that of Corcoran & Riggs. Robb gave notice immediately and later obtained judgment and made seizure of the residuary fund. Hill succeeded to the rights of Robb. The one-tenth covered by the order of the bank in favor of Hamilton was left in the Treasury, subject to the assignments. May 10, 1856, Spain brought suit, claiming the fund under the document of February 12, 1850. Up to this time, neither Wetmore nor any of

the other assignees had heard of Spain's claim against
the fund.

In its decision, this Court referred to Spain's negligence
and delay. It adverted to the rule that the assignee is
entitled to the remedies of the assignor and is subject to
all the equities between him and his debtor, and said:
(p. 624) "But in order to perfect his title against the
debtor it is indispensable that the assignee should im-
mediately give notice of the assignment to the debtor,
for otherwise a priority of right may be obtained by a
subsequent assignee, or the debt may be discharged by a
payment to the assignee [assignor] before such notice."

If a debtor pays, or becomes bound to pay, a later
assignee, he is not liable to an earlier assignee who failed
to give him notice of his assignment. And if, without
notice of any assignment, he pays the assignor he cannot
be held by the assignee. To safeguard against such
things, it is necessary for an assignee to give the debtor
notice of his assignment. But it does not follow that
mere priority of notice of the later assignee, who took
nothing by his assignment, will subordinate the rights of
an earlier assignee. That case does not establish or apply
the rule contended for by respondent.

In *Laclede Bank* v. *Schuler*, 120 U. S. 511, it was held
that a bank is not liable to a holder of a check which was
not presented for payment until after the drawer had
made a general assignment for the benefit of creditors,
and directed the bank to hold the fund subject to the
order of the assignee. This case does not support the rule
applied by the Circuit Court of Appeals. A check in
usual form does not constitute an assignment. It is an
order which may be countermanded at any time before
it is cashed. *Fourth Street Bank* v. *Yardley*, 165 U. S.
634, 643; *Florence Mining Co.* v. *Brown*, 124 U. S. 385,
391.

The doctrine that mere priority of notice to trustee or
debtor gives priority of right to a later assignee over an

earlier assignee of a chose in action is generally referred to *Dearle* v. *Hall* and *Loveridge* v. *Cooper,* 3 Russell, 1, decided at the same time and upon the same principle. The leading case is *Dearle* v. *Hall.* In that case, there was much more in favor of the second assignee than mere priority of notice. Brown, *cestui que trust* under his father's will, made three assignments of income payable to him during his life by the executors. The two earlier assignments were made to Dearle and Sherring, respectively. Each was for a part of the annual income. By the terms of the assignments the assignor was permitted to continue to collect, and for years he did collect, the income assigned. No notice of the earlier assignments was given to the executors. Before he purchased, Hall, the latest assignee, diligently inquired of the trustees as to Brown's title and the amount of income paid him. The trustees knew of no assignments, and without any suspicion of prior incumbrance, Hall in good faith purchased the entire claim. He gave immediate notice of his assignment to the trustees and received assurance that the income would be paid to him. When it became due, an installment was paid to him. Thereafter, the earlier assignees gave notice and demanded payment under their respective assignments. The trustees withheld all payments. Suit was brought by Dearle and Sherring against Hall to establish priority of their assignments over his. In the lower court, Sir Thomas Plumer, M. R., gave judgment in favor of Hall, and it was affirmed by Lord Lyndhurst, L. C. Two grounds of the decision may be gathered from the opinions: (1) That the negligence of the prior assignees in failing to give notice to the trustees resulted in Hall being induced to purchase without knowledge of the prior assignments. (2) That notice to the trustees was necessary to perfect title,—as, " the act of giving the trustee notice is in a certain degree taking possession of the fund." (See *Ward* v. *Duncombe,* L. R. A. C. [1893] 369, 387.) These cases

did not decide that notice by a subsequent assignee after his purchase, without any inquiry in advance of his purchase, will subordinate the title of the prior assignor to that of the later. No such questions were involved. But later, in the case of *Foster* v. *Cockerell,* in the House of Lords, 3 Cl. &' F. 456, that question was decided in favor of the subsequent assignee, and it appears to have become the settled rule in England. However, it has been the subject of much discussion and explanation by the English courts. See *Wilmot* v. *Pike,* 5 Hare, 14; *Ward* v. *Duncombe, .supra.* It appears that in 1814 in *Cooper* v. *Fynmore,* 3 Russell, 60, Sir Thomas Plumer, V. C., himself decided that mere neglect of notice was not sufficient to postpone the first assignee, and held (p. 64): "In order to deprive him of his priority, it was necessary that there should be such laches as, in a court of equity, amounted to fraud." In 1827, *Dearle* v. *Hall* and *Loveridge* v. *Cooper* were decided. In 1833, Lord Lyndhurst, then Chief Baron, in *Smith* v. *Smith,* 2 Cr. & M. 231, in the Court of Exchequer, held that the second assignee in order to obtain priority must show that he exercised proper caution in taking the assignment, and that he had applied to the trustees to know if any previous assignment had been made, and that, unless he so applied to each of the trustees, he would not have exercised due caution or done all that he ought to have done. Lord Herschell, in *Ward* v. *Duncombe, supra,* said (p. 380): "The language thus used by the Chief Baron is somewhat remarkable. It would seem, if correctly reported, to indicate the view that a second incumbrancer would only obtain priority over an earlier one if he had used due caution, and had, in fact, made such inquiry as a prudent man would of each of the trustees. This view is in direct conflict with the decision of this House two years later in *Foster* v. *Cockerell* in which Lord Lyndhurst himself delivered the leading opinion." Undoubtedly the first application of

the rule that mere priority of notice gives priority of right was in *Foster* v. *Cockerell,* but it is always referred to *Dearle* v. *Hall* and *Loveridge* v. *Cooper.* In *Ward* .v *Duncombe,* the earlier decisions by which the rule was established were discussed by Lord Herschell and Lord Macnaghten. The opinions leave the impression that the rule itself was not deemed to be wholly satisfactory, and that it is not very clear upon what principle it rests. *Ward* v. *Duncombe, supra,* 391.

There is no decision of this Court which sustains the contention that, as between successive assignees of the same chose in action, mere priority of notice gives priority of right. It seems to us that the better reasons are against such a rule. By the first assignment, the rights of the assignor pass to the assignee. The creditor has a right to dispose of his own property as he chooses and to require the debt to be paid as he directs, without the assent of the debtor. See Story, Equity Jurisprudence, 11th ed., § 1057. Notice of the assignment to the debtor adds nothing to the right or title transferred. A subsequent assignee takes nothing by his assignment, because the assignor has nothing to give. See *Judson* v. *Corcoran, supra,* 614. If, after assignment, the assignor receives payment from the debtor, he is liable to the assignee. Failure of the first assignee to give notice does not divest him of any title or right or vest any claim in a subsequent purchaser. It cannot injuriously affect an intending purchaser who makes no inquiry of the debtor concerning the assignor's title. The debtor is not bound to answer inquiries concerning the assignor's title, and there can be no assurance that an intending purchaser can ascertain the incumbrance by inquiry of the debtor having notice of the earlier assignment. *Low* v. *Bouverie,* (1891) L. R. 3 Ch. 82, 99. Compare *Ward* v. *Duncombe, supra,* 393. It is impossible to eliminate all risk from such a transaction. If the second assignee elects to rely on the

representations of the vendor as to his title, and is deceived, he cannot shift his loss to the first assignee, unless some act or omission of the latter was proximate to the deception.

Facts and circumstances may create an equitable estoppel against the first assignee. *Herman* v. *Mutual Life Insurance Co.*, 218 Mass. 181; *Rabinowitz* v. *People's National Bank,* 235 Mass. 102.[6] It would be unconscionable to permit him to prevail over a later assignee whom he had misled or deceived in respect of the assignor's title at the time of purchase by the latter. But, assuming a duty on the first purchaser to protect a subsequent assignee against deception and fraud by the assignor, there is no ground for subordinating his claim, unless his failure was an element in or contributed to the deception. In the absence of inquiry by the subsequent purchaser, the failure of the first to give notice is immaterial.

In a case where, as here, the later assignee has made no inquiry of the debtor in advance of taking his assignment, there is no analogy between the giving of notice by the

---

[6] In *Ward* v. *Duncombe*, Lord Macnaghten said (p. 391):

" The general principle applicable to all equitable titles is, I think, well expressed by Lord Cairns in *Shropshire Union Railways and Canal Company* v. *The Queen* (L. R. 7 E. & I. at p. 506): 'A pre-existing equitable title,' said Lord Cairns, 'may be defeated by a supervening legal title obtained by transfer '—he was there speaking of an equitable title to shares. Then he goes on: 'And I agree with what has been contended, that it may also be defeated by conduct, by representations, by misstatements of a character which would operate and enure to forfeit and to take away the pre-existing equitable title. But I conceive it to be clear and undoubted law, and law the enforcement of which is required for the safety of mankind, that in order to take away any pre-existing admitted equitable title, that which is relied upon for such a purpose must be shewn and proved by those upon whom the burden to shew and prove it lies, and that it must amount to something tangible and distinct, something which can have the grave and strong effect to accomplish the purpose for which it is said to have been produced.' "

first assignee to the debtor and the taking of possession of tangible personal property by a purchaser. It is impossible in any real sense to transfer possession of accounts receivable or the like, and, as to them, an assignee does not become clothed with the *indicia* of ownership as does one taking possession of tangible things. It is not accurate to say that notice is necessary to perfect title in the assignee of a chose in action. While failure to give notice may become an important element in a situation from which equitable estoppel may arise against the first assignee, it cannot be said to be necessary to or an element in acquisition of title.

The result will be the same if it be assumed that each *bona fide* purchaser takes merely an equity in the chose in action assigned. If equities are equal, the first in time is best in right. Otherwise the stronger equity will prevail. While there are contingencies which entitle the second to prevail over the first assignee,[7] we hold that mere priority of notice to the debtor by a second assignee, who lent his money to the assignor without making any inquiry of the

---

[7] In Professor James Barr Ames' Cases on Trusts, 2nd ed., in a note on *Dearle* v. *Hall*, it is said (p. 328): "Whatever view may be entertained as to the English doctrine which prefers the assignee who first gives notice, the second assignee is in several contingencies clearly entitled to supplant the first assignee. E. g. (1) If, acting in good faith, he obtains payment of the claim assigned; *Judson* v. *Corcoran*, 17 How. 612; *Bridge* v. *Conn. Company*, 152 Mass. 343; *Bentley* v. *Root*, 5 Paige 632, 640; or (2) if he reduces his claim to a judgment in his own name; *Judson* v. *Corcoran*, 17 How. 612; *Mercantile Company* v. *Corcoran*, 1 Gray 75; or (3) if he effects a novation with the obligor, whereby the obligation in favor of the assignor is superseded by a new one running to himself, *N. Y. Company* v. *Schuyler*, 34 N. Y. 30, 80; *Strange* v. *Houston Company*, 53 Tex. 162; or (4) if he obtains the document, containing the obligation, when the latter is in the form of a specialty. *Re Gillespie*, 15 Fed. 734; *Bridge* v. *Conn. Company*, 152 Mass. 343; *Fisher* v. *Knox*, 13 Pa. 622. In all these cases, having obtained a legal right in good faith and for value, the prior assignee cannot properly deprive him of this legal right."

debtor, is not sufficient to subordinate the first assignment to the second. The petitioner is entitled to the fund.

*Decree reversed.*

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur on the ground that the rights of the parties are governed by the law of Massachusetts. •